UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KELLI H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03125-TAB-JMS |
| | ) | |
| ANDREW M. SAUL Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.      Introduction**

Plaintiff appeals the Social Security Administration's denial of her application for disability benefits. [Filing No. 10.] Seeking remand, Plaintiff argues that the Administrative Law Judge erred when determining Plaintiff's residual functional capacity and her capability of performing past relevant work at step four. Plaintiff specifically contends that the ALJ failed to provide legally sufficient reasons for giving "very little weight" to the opinion of Plaintiff's treating physician, Dr. Arata, and that the ALJ erroneously relied on Plaintiff's activities of daily living to support the finding that Plaintiff was capable of performing past relevant work. However, the Court finds that the ALJ did not commit reversible error. The ALJ provided sufficient reasons for assigning little weight to Dr. Arata's opinions, and substantial evidence supports the ALJ's determination that Plaintiff is capable of performing past work as a dispatcher. Therefore, Plaintiff's request for remand [Filing No. 10] is denied, and the Commissioner's decision denying Plaintiff's application for disability benefits is affirmed.

**II.     Background**

On February 23, 2016, Plaintiff filed an application for supplemental security income, alleging disability since October 31, 2014. [Filing No. 8-2, at ECF p. 16.] The agency denied the claim both initially and upon review. [Filing No. 8-2, at ECF p. 16.] An ALJ then held a hearing, used the five-step evaluation, and found Plaintiff was not disabled for purposes of supplemental security income. [Filing No. 8-2, at ECF p. 27.]

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 31, 2014. [Filing No. 8-2, at ECF p. 18.] At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar and cervical disc disease, mild degenerative joint disease of the bilateral knees, partial right rotator cuff tear, bilateral De Quervain's tendinosis, mild carpal tunnel syndrome, left cubital tunnel syndrome, and right hip bursitis. [Filing No. 8-2, at ECF p. 18.] At step three, the ALJ concluded that none of Plaintiff's impairments or combination of impairments met or were medically equal to any of the listed impairments. [Filing No. 8-2, at ECF p. 19.]

In the ALJ's RFC assessment, the ALJ considered Plaintiff's severe impairments, non-severe impairments, and all symptoms consistent with objective medical evidence and other evidence in the record. [Filing No. 8-2, at ECF p. 20-25.] The ALJ found that Plaintiff had the RFC to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant requires a sit-stand option allowing her to stand for 1-2 minutes after sitting for 30 minutes. [Plaintiff] cannot climb ladders, ropes, or scaffolding. The claimant can no more than occasionally balance, stoop, kneel, crouch crawl, twist, and climb ramps and stairs. [Plaintiff] should avoid concentrated exposure to extreme cold and workplace hazards such as unprotected heights and dangerous moving machinery. [Plaintiff can] no more than occasionally reach overhead bilaterally. [Plaintiff] can no more than frequently handle, finger, and feel bilaterally.

[Filing No. 8-2, at ECF p. 20-21.] Accordingly, the ALJ found at step four that Plaintiff could perform past relevant work as a dispatcher as generally performed. [Filing No. 8-2, at ECF p. 25.] Thus, the ALJ determined Plaintiff was not disabled. [Filing No. 8-2, at ECF p. 27.]

### III. Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ correctly discounted the opinion of Plaintiff's treating physician, Dr. Arata, and provided legally sufficient reasons for doing so, and (2) whether the ALJ erroneously relied on Plaintiff's activities of daily living to support the finding that Plaintiff was capable of performing past relevant work. In evaluating Plaintiff's arguments, the Court's role is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court is not permitted to reweigh the facts or evidence. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). The Court's review is limited to finding whether there is substantial evidence to support the ALJ's decision. 42 U.S.C. § 405(g). When there is substantial evidence to support the ALJ's decision, the Court must affirm. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *L.D.R. v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019), *cert. denied*, __ U.S. __, 140 S. Ct. 378, 205 L. Ed. 2d 230 (2019). The decision must reflect that the ALJ built a "logical bridge" from the evidence to the conclusion. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). As explained below, the ALJ's decision in this case is supported by substantial evidence. The ALJ provided legally sufficient reasons for giving less than controlling weight to treating physician Dr. Arata's opinions, and the ALJ did not erroneously rely on Plaintiff's activities of daily living.

### A. Weight Given to Treating Physician Dr. Arata's Opinions

Plaintiff argues that the ALJ improperly relied upon other evidence in the record instead of the opinion of Plaintiff's treating physician, Dr. Arata. [Filing No. 10, at ECF p. 9-11.] Plaintiff first claims that the ALJ erroneously relied on Agency examining physician Dr. Wilson's March 2016 findings. [Filing No. 10, at ECF p. 9.] On the other hand, the Commissioner contends that the Plaintiff "selectively carve[d] out Dr. Wilson's exam as if it were the only evidence upon which the ALJ relied." [Filing No. 16, at ECF p. 15.] "[A]gency medical . . . consultants are highly qualified and experts in Social Security disability evaluation," and administrative law judges must consider evidence from these consulting physicians. 20 C.F.R. § 404.1513a(b)(1). Administrative law judges are not required to adopt the findings of such consulting physicians, but the evidence is considered according to 20 C.F.R. § 404.1527. When evaluating such evidence, 20 C.F.R. § 404.1527(c) sets forth the following factors regarding the weight to be given: the examining relationship, treatment relationship, supportability, consistency, specialization, and any other factors that support or contradict the medical opinion. 20 C.F.R. § 404(c)(1)-(6). Using these factors, "[a]n ALJ must only minimally articulate his or her justification for rejecting or accepting specific evidence." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal citation and quotation marks omitted). Even if an ALJ discounts a medical opinion, the ALJ is not prevented from considering it. *Elder*, 529 F.3d at 415.

Plaintiff contends that the ALJ erroneously relied on Dr. Wilson's medical findings because Plaintiff also suffers from other impairments Dr. Wilson did not mention. [Filing No. 10, at ECF p. 9.] However, the ALJ correctly recognized this inconsistency. [Filing No. 8-2, at ECF p. 25.] The ALJ in fact gave "limited weight" to the opinions of the State agency medical

consultants, which necessarily includes Dr. Wilson, because the assessments failed to address Plaintiff's additional impairments. [Filing No. 8-2, at ECF p. 25.] The ALJ articulated this inconsistency as the reason she discounted Dr. Wilson's opinion. The ALJ did not erroneously rely on Dr. Wilson's findings since it is within her authority to still consider them. *See, e.g., Elder*, *id.* Therefore, the ALJ did not err when she considered Dr. Wilson's findings along with all the other evidence in the record.

Plaintiff next argues the ALJ improperly played doctor by determining that objective medical evidence showed that Plaintiff could frequently handle and finger. [Filing No. 10, at ECF p. 10-11; Filing No. 17, at ECF p. 3-5.] Plaintiff also argues that if the ALJ disagreed with Dr. Arata's opinions, the ALJ should have informed her decision with medical expert testimony and failing to do so required her to play doctor. [Filing No. 10, at ECF p. 10-11.]

While medical sources are to be considered, the ALJ has the final responsibility for determining a claimant's RFC. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 404.1546(c). In order to assess the claimant's RFC, the ALJ must weigh the evidence and consider conflicting medical opinions in light of all the other evidence in the record. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Only if there is insufficient evidence to resolve an inconsistency or insufficiency within the record evidence itself may an ALJ recontact the medical source or ask others for more information. 20 C.F.R. § 416.920b(b)(2). "[T]he 7th Circuit has long cautioned ALJ's against succumbing to the temptation to play doctor" when deciding residual functional capacity. *See, e.g.*, *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001); *Lopez v. Barnhart*, 336 F.3d 535 (7th Cir. 2003), *Moon v. Colvin*¸763 F.3d 718, 722 (7th Cir. 2014). However, it is only when the ALJ's conclusion is not supported by any medical evidence in the record that the ALJ has inappropriately played doctor. *See, e.g.,*

*Engstrand v. Colvin¸* 788 F.3d 655, 660-61 (7th Cir. 2015); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

Plaintiff argues that the ALJ played doctor when she imposed a more restrictive RFC than what Drs. Eskonen and Ruiz recommended, thus requiring her to interpret medical data "outside the purview of [a] layperson." [Filing No. 17, at ECF p. 4.] Plaintiff fails to specifically identify the medical data relied upon by the ALJ that was outside the purview of a layperson. In her RFC assessment, the ALJ summarized all the medical evidence before her, considered all symptoms and the extent to which the symptoms could be reasonably accepted as consistent with the objective medical evidence and other evidence, and all the opinion evidence. [Filing No. 8-2, at ECF p. 21-26.] It was within the ALJ's authority to make inferences from all of the evidence in the record and find that Plaintiff's "additional impairments and associated symptoms," as indicated by the rest of the record, "could reasonably limit [Plaintiff's]" RFC beyond the restrictions recommended by Drs. Eskonen and Ruiz. [Filing No. 8-2, at ECF p. 25.]

Plaintiff also fails to fully develop her argument regarding why the ALJ should have informed her decision with medical-expert testimony. [Filing No. 10, at ECF p. 10-11.] Plaintiff does not support this argument with any citation to objective medical evidence she argues the ALJ improperly interpreted. The cases Plaintiff cites in support of her argument are unhelpful because those cases discuss the specific objective medical evidence the ALJ improperly evaluated. *See, e.g., Green v. Apfel*, 204 F.3d 780, 781-82 (7th Cir. 2000) (remanding in part because ALJ relied on clinical records of pain control through Tylenol and Motrin, lack of clinical records documenting evidence of angina or arthritic problems that would account for the pain, and pulmonary function studies and arterial blood gas studies); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where ALJ determined the significance of a new MRI

and recommendation himself without consulting a physician); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJ played doctor by "summariz[ing] the results of the 2010 MRI in barely intelligible medical mumbo-jumbo"). Here, the ALJ properly weighed the evidence and considered the conflicting medical opinions in light of all the other evidence in the record.

Fourth, Plaintiff argues that the ALJ failed to evaluate Dr. Arata's opinions as those of a treating source and did not apply the correct legal standard when evaluating Dr. Arata's opinions. [Filing No. 10, at ECF p. 11.] Notably, Plaintiff states she is not arguing that controlling weight was owed to Dr. Arata's position, but fails to explain why or precisely what weight Dr. Arata's opinions should otherwise be given. [Filing No. 10, at ECF p. 9 n.7.] Generally, medical opinions from a claimant's treating source are given more weight. 20 C.F.R. § 404.1527(c)(2). When a treating source's opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record, the medical opinion is given controlling weight. 20 C.F.R. § 404.1527(c)(2). Otherwise, the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i), (c)(2)(ii), and (c)(3)-(6) are used to determine what weight is to be given to the medical opinion. These factors are the "[l]ength of treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability," "[c]onsistency," "[s]pecialization," and any "[o]ther factors . . . which tend to support or contradict the medical opinion." If the ALJ affords less than controlling weight after evaluating the relevant factors, the decision will not be overturned as long as the ALJ minimally articulated her reasons. *Elder*, 529 F.3d at 415.

A minimally articulated reason to discount a treating source opinion does not require expressly addressing every regulatory factor in the ALJ's evaluation. In *Elder*, the court upheld an ALJ's decision to deny a physician's opinion controlling weight when the ALJ evaluated the

opinion considering only the nature and extent of the treatment relationship, the supportability of the opinion, and the specialty of the treating doctor. *Id.* at 416. A treating physician's opinion can even be excluded on inconsistency alone. Similarly, the ALJ in *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019), did not erroneously reject the opinions of two treating physicians when their opinions contained internal inconsistencies and were inconsistent with the other evidence in the record.

Plaintiff fails to fully develop her argument and does not explain precisely how the ALJ did not apply the correct legal standard when evaluating Dr. Arata's opinions. However, the Court is able to determine from the ALJ's decision that the evaluation of Dr. Arata's opinion involved the factors of consistency, supportability, and length of treatment and frequency of examination set forth in 20 C.F.R. § 404.1527(c). [Filing No. 8-2, at ECF p. 26.] Dr. Arata specifically opined that Plaintiff suffers from "significant peripheral neuropathy," and is therefore limited to standing for a total of one hour and sitting for a total of one hour in a normal eight hour workday, lifting less than five pounds occasionally, and rarely performing gross and fine manipulation with the upper extremities. [Filing No. 8-22, at ECF p. 61-62.]

In evaluating the consistency of Dr. Arata's opinion, the ALJ correctly noted that there are otherwise no objective findings in the record to corroborate Dr. Arata's proposal that Plaintiff suffers from significant peripheral neuropathy. [Filing No. 8-2, at ECF p. 26.] An EMG study performed in 2017 showed that she did have ulnar neuropathy at the right elbow, but a subsequent EMG study in 2018 showed only mild left carpal tunnel syndrome without any neuropathy. [Filing No. 8-2, at ECF p. 24-25.] Neither EMG indicated Plaintiff has significant peripheral neuropathy. Further, post-corrective surgery examinations indicate a positive response, with normal and equal grip strength in both hands and wrists. [Filing No. 8-2, at ECF

8

p. 26.] Dr. Wilson, who examined the claimant at the request of the State agency, also obtained similar results in examining Plaintiff's range of motion at the elbows and wrists and bilateral grip strength. [Filing No. 8-2, at ECF p. 23.]

Referring to the medical record as a whole to evaluate the supportability of Dr. Arata's opinion, the ALJ noted that Plaintiff's history of impairments could reasonably limit her capacity for heavy lifting or prolonged standing and walking. [Filing No. 8-2, at ECF p. 26.] However, the medical record indicated that the majority of physical examinations since the alleged onset date in 2014 revealed normal lower extremity strength, regular gait, and largely preserved range of motion of the neck, back, knees, elbows, and shoulder joints. [Filing No. 8-2, at ECF p. 26.] Additionally, Plaintiff's medical record indicated positive responses to bilateral first dorsal compartment release surgery, left ulnar nerve transportation, and right carpal tunnel release. [Filing No. 8-2, at ECF p. 26.] Finally, the ALJ correctly noted that Plaintiff has received only sporadic treatment for her lower back pain. [Filing No. 8-2, at ECF p. 26.]

Based on the evaluation of the relevant factors in 20 C.F.R. § 404.1527(c)(2)(i), (c)(2)(ii), and (c)(3)-(6), the ALJ found that Dr. Arata's opinion was "inconsistent with the duration and severity of symptoms associated with the claimant's medically determinable impairment as reflected in the longitudinal medical record." [Filing No. 8-2, at ECF p. 26.] The foregoing demonstrates that the ALJ, at the very least, minimally articulated her reasons for giving treating physician Dr. Arata's opinion little weight. Thus, the ALJ built a logical bridge from the evidence to her conclusion.

### B. Consideration of Activities of Daily Living

Finally, Plaintiff argues that the ALJ erroneously relied on her activities of daily living to reject Dr. Arata's opinion and impermissibly equated those activities of daily living to an ability to work. [Filing No. 10, at ECF p. 11.] The Commissioner responds by stating that Plaintiff "isolate[d] a single passage without consideration for the context in which it was made; the actual findings the ALJ made in the passage; or the ALJ's decision as a whole," and therefore, Plaintiff is incorrect. [Filing No. 16, at ECF p. 21.]

As explained above, 20 C.F.R. § 404.1527(c) provides factors for evaluating the weight to be given to a treating source's opinions. This is not an exclusive list however, and the ALJ is permitted to consider any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c)(6). In this case, the ALJ noted that:

> In addition to the medical evidence outlined above, the undersigned also recognizes that [Plaintiff]'s Adult Function Report, prepared in May of 2016, documents her capacity for a variety of usual daily activities such as dressing, bathing, driving, preparing simple meals, and shopping. She also testified that she was able to earn a college degree by taking online classes throughout much of 2015 and 2016, and that she remains capable of using her hands to perform chores such as dusting, washing dishes, and vacuuming, and to use a computer and cellular phone for limited periods. These considerations, when coupled with her relatively stable symptomology and favorable response to treatment, fail to provide strong support for the exertional, postural, and manipulative limitations proposed by Dr. Arata.

[Filing No. 8-2, at ECF p. 26.] The ALJ was not equating an ability to perform daily activities with the ability to work full-time. Instead, the ALJ explicitly stated she was referring to Plaintiff's activities of daily living merely as indicating an additional ground for finding that Dr. Arata's opinion was inconsistent with the record as a whole. [Filing No. 8-2, at ECF p. 26.] It was not error for the ALJ to consider Plaintiff's activities of daily living in addition to all the other evidence in the record when evaluating the weight to give to Dr. Arata's opinion.

10

## IV. Conclusion

For these reasons, Plaintiff has not demonstrated that the ALJ committed reversible error. The Court denies the relief Plaintiff requests in her brief in support of appeal [Filing No. 10] and affirms the ALJ's decision.

Date: 3/30/2020

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email